IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| SUNGARD AS NEW HOLDINGS, LLC, *et al.*,[1] | Case No. 22-90018 (DRJ) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket No. 18** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM AND MAINTAIN EXISTING BANK ACCOUNTS, (B) MAINTAIN EXISTING BUSINESS FORMS AND (C) PERFORM INTERCOMPANY TRANSACTIONS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for entry of an interim order (this "Interim Order"): (i) authorizing the Debtors to continue to (a) operate their Cash Management System and maintain their existing Bank Accounts, including honoring certain prepetition obligations related thereto, (b) maintain existing Business Forms, and (c) perform the Intercompany Transactions; and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found it may enter a final order consistent with Article III of the United States

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' tax identification numbers, are: InFlow LLC (9489); Sungard AS New Holdings, LLC (5907); Sungard AS New Holdings II, LLC (9169); Sungard AS New Holdings III, LLC (3503); Sungard Availability Network Solutions Inc. (1034); Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee (3886); Sungard Availability Services Holdings (Canada), Inc. (2679); Sungard Availability Services Holdings (Europe), Inc. (2190); Sungard Availability Services Holdings, LLC (6403); Sungard Availability Services Technology, LLC (9118); Sungard Availability Services, LP (6195); and Sungard Availability Services, Ltd. (4711). The location of the Debtors' service address for purposes of these chapter 11 cases is: 565 E Swedesford Road, Suite 320, Wayne, PA 19087.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing (if any) establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. A final hearing to consider the relief requested in the Motion on a final basis shall be held on **May 11, 2022, at 10:30 a.m. (prevailing Central Time)** and any objections or responses to the Motion shall be filed and served on the notice parties on or prior to **May 4, 2022, at 4:00 p.m. (prevailing Central Time)**.

2. The Debtors are authorized, but not directed, on an interim basis and in their sole direction, to: (a) continue operating the Cash Management System, as described in the Motion and substantially as identified in **Exhibit 1** attached hereto; (b) continue to use the Bank Accounts in existence as of the Petition Date, in the names and with the account numbers existing immediately before the Petition Date, including those accounts identified on **Exhibit 2** attached hereto; (c) pay any ordinary course bank fees and credit card processing fees incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and perform their obligations under the documents and arrangements governing the Bank Accounts;

(d) maintain any corporate card programs, including the PNC Commercial Card Program, and honor all prepetition and postpetition obligations arising thereunder; and (e) continue performance of the Intercompany Transactions among themselves and their non-Debtor affiliates, in the ordinary course of business and consistent with historical practice, *provided*, the Debtors shall maintain current records with respect to all such transfers so that all Intercompany Transactions may be readily ascertained, traced and properly recorded on intercompany accounts; *provided, however*, that such records shall be made available upon request by the U.S. Trustee and any official statutory committee.  To the extent that the transfers within the Cash Management system are disbursements, they will be noted and reflected on the monthly operating reports.  The Debtors shall provide notice to: (i) the U.S. Trustee; (ii) any statutory committee appointed in these chapter 11 cases; (iii) Proskauer Rose LLP and Gray Reed & McGraw LLP, as counsel for the ad hoc group of term loan lenders and term loan DIP lenders; and (iv) Thompson Coburn Hahn & Hessen LLP, counsel for PNC Bank, National Association, as the administrative agent under the Debtors' prepetition revolving credit facility and ABL DIP facility, of any material changes to their Cash Management System.

3. Those agreements existing between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and Cash Management Banks and all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, collateral, and offset rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with the Cash Management Banks (including, for the avoidance of doubt, any rights of the Cash Management Banks to use funds from the Bank Accounts to remedy any overdraft of another Bank Account or other cash management obligations, whether prepetition or

postpetition, to the extent permitted under the applicable agreement), unless the Debtors and the Cash Management Banks agree otherwise, and any other legal rights and remedies afforded to the Cash Management Banks under applicable law shall be preserved.

4. The Debtors are authorized to continue using, in their present form, all Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; *provided* that, once the Debtors have exhausted their existing stock of Business Forms, the Debtors shall ensure that any new Business Forms are clearly labeled "Debtor In Possession"; *provided*, *further*, that, with respect to any Business Forms that exist or are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor-In-Possession" within ten (10) business days after the date of this Interim Order.

5. The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, ACH transfers, and other electronic transfers of any kind issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be (including the completion of any such transaction commenced on or before the Petition Date but not completed until on or after the Petition Date).

6. The Debtors are authorized, pursuant to Bankruptcy Code section 364(b), to continue using any existing corporate credit card or purchase card arrangements, including the PNC Commercial Card Program, issued by the Cash Management Banks in the ordinary course of business and consistent with prepetition practices, including by paying any obligations outstanding with respect thereto, whether or not such obligations were outstanding on or before the Petition

Date. Those agreements existing between the Debtors and the Cash Management Banks governing any existing corporate credit card or purchase card arrangements shall continue to govern the postpetition card relationship between the Debtors and Cash Management Bank and all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, collateral, and offset and termination rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or as otherwise provided in any such agreement with Cash Management Banks.

7. To the extent any of the Debtors' Bank Accounts are not in compliance with Bankruptcy Code section 345(b), the Debtors shall have until May 9, 2022, without prejudice to seeking an additional extension, to come into compliance with Bankruptcy Code section 345(b); *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached. The Debtors may obtain a further extension of the time periods set forth in this paragraph by entering into a written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

8. The Debtors are authorized, in the ordinary course of business, to open any new bank accounts or close any existing Bank Accounts and enter into any ancillary agreements, including new deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate, subject to the terms and provisions of the Debtors' agreement with the Cash Management Banks, as applicable.

9. The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to any Additional Cash Management Bank (as hereinafter defined) at which such account is opened;

*provided* that subject to resolution of any Bankruptcy Code section 345(b) compliance issues, such new account is with one of the Debtors' existing Cash Management Banks or with a bank (an "Additional Cash Management Bank") that: (a) is insured by the FDIC or the Federal Savings and Loan Insurance Corporation; (b) is an authorized depository pursuant to the U.S. Trustee's Operating Guidelines; and (c) agrees to be bound by the terms of this Interim Order. If the Debtors open a new Bank Account, close an existing Bank Account, or enter into any ancillary agreements (other than agreements applied by the Cash Management Banks or an Additional Cash Management Bank to all similarly situated customers), they shall provide notice to: (a) the U.S. Trustee; (b) counsel to any official statutory committee appointed in these chapter 11 cases; (c) Proskauer Rose LLP and Gray Reed & McGraw LLP, as counsel for the ad hoc group of term loan lenders and term loan DIP Lenders; and (d) Thompson Coburn Hahn & Hessen LLP, counsel for PNC Bank, National Association, as the administrative agent under the Debtors' prepetition revolving credit facility and ABL DIP facility; *provided*, *further*, that any such opening shall be timely indicated on the Debtors' monthly operating reports.

10. In the course of providing cash management services to the Debtors, the Cash Management Banks and each Additional Cash Management Bank are authorized, without further order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, from the appropriate accounts of the Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions or other electronic transfers of any

kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

11. In the course of providing cash management services to the Debtors, any distributions, dividends or other payments made by or on account of non-Debtor subsidiaries to the Debtors shall be placed in a segregated account to be established by the Debtors (or in another account after receiving the prior written consent of the Term Loan DIP Agent[3] (acting at the direction of the Required Term Loan DIP Lenders in their sole discretion)), and such funds shall not be withdrawn from such account without the prior written consent of the Term Loan DIP Agent (acting at the direction of the Required Term Loan DIP Lenders in their sole discretion).

12. Notwithstanding any other provision of this Interim Order, the Cash Management Banks shall not be deemed to be nor shall be liable to the Debtors or their estates or otherwise be in violation of this Interim Order if the Cash Management Banks honor a prepetition check or other item drawn on any account that is the subject of this Interim Order: (a) at the direction of the Debtors; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures. Without limiting the foregoing, the Cash Management Banks may assume that any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Interim Order unless otherwise specifically otherwise advised by the Debtors, and the Cash Management Banks shall not have any liability to any party for relying on representations by the Debtors as provided for herein.

---

[3] Capitalized terms used but not otherwise defined in this Interim Order shall have the meanings ascribed to them in the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Authorizing the Debtors to Repay Certain Prepetition Secured Indebtedness, (IV) Granting Liens and Providing Superpriority Administrative Expense Status, (V) Granting Adequate Protection, (VI) Modifying the Automatic Stay, (VII) Scheduling a Final Hearing, and (VIII) Granting Related Relief*.

13. All Intercompany Claims against a Debtor arising after the Petition Date shall be accorded administrative expense priority in accordance with Bankruptcy Code sections 503(b) and 507(a)(2).

14. Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

15. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors', or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to Bankruptcy Code section 365; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens.

16. Notwithstanding anything in this Order to the contrary, any payment to be made, or any authorization contained hereunder shall be subject to the terms of any orders authorizing debtor in possession financing or the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any budget governing or relating to such use) including, without limitation, the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Authorizing the Debtors to Repay Certain Prepetition Secured Indebtedness, (IV) Granting Liens and Providing Superpriority Administrative Expense Status, (V) Granting Adequate Protection, (VI) Modifying the Automatic Stay, (VII) Scheduling a Final Hearing, and (VIII) Granting Related Relief* (as each order may be amended or become final in accordance with the terms thereof, the "DIP Order") and the Approved Budget (as defined in the DIP Order). To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order and the Approved Budget shall control.

17. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

18. Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

19. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon entry.

20. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

21. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Interim Order.

**Signed: April 12, 2022.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**<u>Exhibit 1</u>**

**Cash Management System Schematic**



**Exhibit 2**

**Bank Accounts**

| Entity | Account Type | Bank Name | Account No. | Currency |
|---|---|---|---|---|
| Sungard Availability Services LP | Concentration Account | PNC Bank, N.A. | 6896 | USD |
| Sungard Availability Services LP | Disbursement Account | PNC Bank, N.A. | 6888 | USD |
| Sungard Availability Services LP | Payroll Account | PNC Bank, N.A. | 6861 | USD |
| Sungard Availability Services LP | Lockbox Account | PNC Bank, N.A. | 6845 | USD |
| Sungard Availability Services Canada Ltd. | Canada Operating Account | Bank of Montreal | 6994 | USD |
| Sungard Availability Services Canada Ltd. | Canada Operating Account | Bank of Montreal | 5730 | CAD |
| Sungard Availability Services LP | Stand Alone Account (No Activity) | PNC Bank, N.A. | 6837 | USD |
| Sungard Availability Services Capital, Inc. | Inactive Account | PNC Bank, N.A. | 3014 | USD |