**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SUNGARD AS NEW HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 22-90018 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) CONDITIONALLY APPROVING THE
DISCLOSURE STATEMENT; (II) APPROVING THE COMBINED
HEARING NOTICE; (III) APPROVING THE SOLICITATION AND
NOTICE PROCEDURES; (IV) APPROVING THE FORMS OF BALLOTS
AND NOTICES; (V) APPROVING CERTAIN DATES AND DEADLINES IN
CONNECTION WITH THE SOLICITATION AND CONFIRMATION OF THE PLAN
AND (VI) SCHEDULING A COMBINED HEARING ON (A) FINAL APPROVAL
OF THE DISCLOSURE STATEMENT AND (B) CONFIRMATION OF THE PLAN**

---

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days form the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**Represented parties should act through their attorney.**

**A hearing will be conducted on this matter on June 29, 2022 at 2:00 p.m. (prevailing Central Time) in Courtroom 400, 4th Floor, 515 Rusk Street, Houston, TX 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's home page. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' tax identification numbers, are: InFlow LLC (9489); Sungard AS New Holdings, LLC (5907); Sungard AS New Holdings II, LLC (9169); Sungard AS New Holdings III, LLC (3503); Sungard Availability Network Solutions Inc. (1034); Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee (3886); Sungard Availability Services Holdings (Canada), Inc. (2679); Sungard Availability Services Holdings (Europe), Inc. (2190); Sungard Availability Services Holdings, LLC (6403); Sungard Availability Services Technology, LLC (9118); Sungard Availability Services, LP (6195); and Sungard Availability Services, Ltd. (4711). The location of the Debtors' service address for purposes of these chapter 11 cases is: 565 E Swedesford Road, Suite 320, Wayne, PA 19087.

> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones's home page.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (the "Motion"):[2]

## Preliminary Statement

1.      On April 11, 2022, shortly before commencing these chapter 11 cases, the Debtors entered into the Restructuring Support Agreement with holders of in excess of 80% of the First Lien Credit Agreement Claims and holders of in excess of 80% of the Second Lien Credit Agreement Claims.  The Restructuring Support Agreement provides for, among other things, a comprehensive but flexible path forward pursuant to which the Debtors are simultaneously pursuing two potential restructuring paths with the support of the Consenting Stakeholders: (a) a Sale Scenario, in connection with which the Debtors are currently seeking to sell all, substantially all or one or more groups of their assets through one or more Third Party Sales, or alternatively, through a Credit Bid Sale; and/or (b) an Equitization Scenario, in connection with which the Debtors would seek confirmation of a chapter 11 plan providing for the equitization of outstanding funded debt.  Both the Sale Scenario and the Equitization Scenario contemplate the confirmation and implementation of a chapter 11 plan to complete the chapter 11 cases.  Accordingly, to ensure an expeditious and efficient confirmation process, the Debtors' proposed Plan provides for alternative treatment options in respect of the Debtors' funded indebtedness to accommodate the different outcomes that may result from the pursuit of these restructuring transactions.

---

[2]      A description of the Debtors and their businesses is set forth in the *Declaration of Michael K. Robinson, Chief Executive Officer and President of the Debtors in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 7] (the "First Day Declaration"), filed on the Petition Date and incorporated by reference herein.

2.      Specifically, the Plan provides for the distribution of, to the extent applicable, (a) the Third Party Sale Consideration, (b) the Credit Bid Sale Consideration, (c) reorganized equity and take-back debt in the Reorganized Debtors and/or (d) cash or the proceeds of any assets not included in the foregoing to the Holders of Term Loan DIP Facility Claims, First Lien Credit Agreement Claims, Second Lien Credit Agreement Claims and Non-Extending Second Lien Credit Agreement Claims, all as set forth in more detail in the Plan.  Further, the Plan incorporates the terms of the Global Settlement negotiated by the Debtors, the Committee and the Required Consenting Stakeholders in resolution of the Committee's disputes relating to entry of the Final DIP Order.  The Global Settlement provides for Holders of General Unsecured Claims to receive, among other things, their pro rata share of (i) a GUC Recovery Pool in the amount of $1.375 million, plus an amount equal to 50% of any unused funds authorized under the Critical Vendor Order up to a cap of $1 million, plus (ii) if applicable, 3.5% of each dollar realized from one or more Third Party Sales where the cash proceeds collectively exceed $425 million.

3.      This Plan structure ensures that the Debtors have the flexibility they need to maximize the value of their estates, while ensuring, regardless of the outcome of the Debtors' ongoing sale process, a transparent and comprehensive resolution to these chapter 11 cases. Accordingly, the Debtors seek conditional approval of the Disclosure Statement and solicitation documents and the establishment of a timeline for Plan confirmation in order to begin the solicitation process and to continue to progress these chapter 11 cases toward an expeditious and efficient conclusion.

**Relief Requested**

4.      By the Motion, the Debtors seek entry of an order, substantially in the form attached hereto (the "Disclosure Statement Order"):

a.  *Disclosure Statement*.  Conditionally approving the adequacy of the information provided in the combined disclosure statement and plan, substantially in the form filed contemporaneously herewith (the "<u>Plan</u>" or "<u>Disclosure Statement</u>" or "<u>Plan and Disclosure Statement</u>," as applicable);[3]

b.  *Combined Hearing Notice*.  Approving the combined hearing notice, substantially in the form attached as <u>Exhibit 1</u> to the Disclosure Statement Order ("<u>Combined Hearing Notice</u>");

c.  *Solicitation Procedures*.  Approving the solicitation and notice procedures with respect to the Plan as set forth in <u>Exhibit 2</u> to the Disclosure Statement Order (the "<u>Solicitation Procedures</u>");

d.  *Solicitation Packages*.  Finding that the solicitation materials and documents included in the solicitation packages (the "<u>Solicitation Packages</u>") that will be sent to the Holders of Claims entitled to vote to accept or reject the Plan are in compliance with Bankruptcy Rules 3017(d) and 2002(b);

e.  *Ballots*.  Approving the forms of the ballots and notices to be distributed in connection therewith, substantially in the forms attached as <u>Exhibits 3-7</u> to the Disclosure Statement Order (the "<u>Ballots</u>");

f.  *Other Notices*.  Approving the following forms:

- Notice to Holders of Claims in the Unimpaired Accepting Classes (as defined below) (the "<u>Presumed to Accept Notice</u>"), substantially in the form attached as <u>Exhibit 8</u> to the Disclosure Statement Order;

- Notice to Holders of Claims and Interests in the Impaired Deemed Rejecting Classes (as defined below) (the "<u>Presumed to Reject Notice</u>"), substantially in the form attached as <u>Exhibit 9</u> to the Disclosure Statement Order;

- Notices to applicable counterparties to Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan (as the case may be) (the "<u>Assumption Notice</u>" and the "<u>Rejection Notice</u>," respectively), substantially in the form attached as <u>Exhibits 10(a)</u> and <u>(b)</u> to the Disclosure Statement Order, respectively; and

---

[3]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan and Disclosure Statement.

- Notice to Holders of Claims that are subject to a pending objection (the "Disputed Claims Notice"), substantially in the form attached as Exhibit 11 to the Disclosure Statement Order.

g.     *Confirmation Dates*.  Establishing certain dates and deadlines with respect to the Plan Confirmation Schedule, subject to modification as necessary (the "Plan Confirmation Schedule"):

| Event | Date |
| --- | --- |
| Voting Record Date | June 29, 2022 |
| Solicitation Deadline | Three (3) Business Days after entry of the Disclosure Statement Order or as soon as reasonably practicable thereafter. |
| Plan Supplement Date | July 27, 2022 |
| Voting Deadline | August 3, 2022 at 4:00 p.m. (prevailing Central Time) |
| Plan and Disclosure Statement Objection Deadline | August 3, 2022 at 4:00 p.m. (prevailing Central Time) |
| Deadline to File Voting Report | August 8, 2022 |
| Combined Hearing on Disclosure Statement and Plan | August 9, 2022 |

**Jurisdiction and Venue**

5.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order.

6.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The bases for the relief requested herein are sections 105(a), 502, 1123(a), 1124, 1125, 1126 and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3003, 3016, 3017, 3018, 3019, 3020 and 9006 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Rule 2002-1, 3016-1, 3016-2 and 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules") and Section P of the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures").

### Background

8.      On April 11, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  On the Petition Date, the Court entered an order [Docket No. 27] authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  On April 25, 2022, the United States Trustee for the Southern District of Texas appointed the Committee [Docket No. 137].

9.      The Debtors and their non-Debtor affiliates (collectively, the "Company") provide high availability, cloud-connected infrastructure services built to deliver business resilience to their customers in the event of an unplanned business disruption, ranging from man-made events to natural disasters.  As of the Petition Date, the Debtors employed approximately 585 individuals in the United States and Canada, and the Company operated 55 facilities (comprising 24 data centers and 31 work area recovery centers) and provided services to approximately 2,001 customers across the United States, the United Kingdom, Canada, Ireland, France, India, Belgium, Luxembourg and Poland.  The Company generated approximately $587 million in revenue for fiscal year 2021 and, as of the Petition Date, the Debtors had approximately $424 million in aggregate principal amount of prepetition funded debt obligations.

## Summary of the Plan[4]

10.     As a broad overview, the Plan provides for the treatment of Claims and Interests

through a comprehensive restructuring and/or sale of the Debtors' assets, and contemplates the

distribution of consideration in accordance with the priorities established by the Bankruptcy Code.

11.     Specifically, the Plan provides that, among other things:

- Each Holder of an Allowed ABL DIP Facility Claim shall be (i) paid in full in Cash, or (ii) afforded such other treatment as is acceptable to the Required ABL DIP Lenders.

- Each Holder of an Allowed Term Loan DIP Facility Claim shall receive:

  o (a) in the Sale Scenario, up to the Allowed Amount of such Holder's Claim in available Third Party Sale Consideration from one or more Third Party Sales;

  o (b) in the Sale Scenario, to the extent a Credit Bid Sale occurs, up to the Allowed Amount of such Holder's Term Loan DIP Facility Claim in Credit Bid Sale Consideration;

  o (c) to the extent the Debtors reorganize pursuant to the Equitization Scenario and the Allowed Term Loan DIP Facility Claims have not been satisfied in full in Cash, its Pro Rata share of (i) the Take Back Debt Facility and (ii) Reorganized Debtor Equity with a value up to an amount necessary to satisfy Term Loan DIP Facility Claims in full after taking into account (x) any Cash distributed or to be distributed pursuant to the preceding clause (a) and (y) the debt issued under the Take Back Debt Facility; and/o;

  o (d) any funds payable in accordance with Article VIII.J.1 of the Plan, including cash and proceeds of any assets not included in a Third Party Sale, Credit Bid Sale, and/or Equitization Scenario up to the Allowed Amount of such Holder's Term Loan DIP Facility Claim, or such other treatment as is acceptable to the Required Consenting Stakeholders.

- Each Holder of an Allowed Other Secured Claim shall receive: (a) payment in full in Cash; (b) delivery of collateral securing such Allowed Other Secured Claim; (c) Reinstatement of such Allowed Other Secured Claim; or (d) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with Bankruptcy Code section 1124.

---

[4]   The summary of the Plan provided herein is qualified in its entirety by reference to the Plan.  In the case of any inconsistency between this Motion and the Plan, the Plan shall govern.

- Each Holder of an Allowed Other Priority Claim shall receive:  (a) payment in full in Cash; (b) Reinstatement of such Allowed Other Priority Claim; or (c) such other treatment rendering its Allowed Other Priority Claim Unimpaired in accordance with Bankruptcy Code section 1124.

- Each Holder of an Allowed First Lien Credit Agreement Claim shall receive:

  o (a) to the extent a Third Party Sale occurs, up to the Allowed Amount of such Holder's First Lien Credit Agreement Claim in any remaining Third Party Sale Consideration after Term Loan DIP Facility Claims have been indefeasibly paid in full;

  o (b) to the extent a Credit Bid Sale occurs, up to the Allowed Amount of such Holder's First Lien Credit Agreement Claim in any remaining Credit Bid Sale Consideration after Term Loan DIP Facility Claims have been indefeasibly paid in full;

  o (c) to the extent the Debtors reorganize pursuant the Equitization Scenario and the First Lien Credit Agreement Claims have not been satisfied in full, its Pro Rata share of the First Lien Equitization Consideration after the Term Loan DIP Facility Claims have been indefeasibly paid in full; and/or

  o (d) any funds payable in accordance with Article VIII.J.1 of the Plan, including cash and proceeds of any assets not included in a Third Party Sale, Credit Bid Sale, and/or Equitization Scenario up to the Allowed Amount of such Holder's First Lien Credit Agreement Claim after Term Loan DIP Facility Claims have been indefeasibly paid in full.

- Each Holder of an Allowed Second Lien Credit Agreement Claim shall receive:

  o (a) to the extent a Third Party Sale occurs, up to the Allowed Amount of such Holder's Second Lien Credit Agreement Claim in available Third Party Sale Consideration, if any, in accordance with the Second Lien Allocation Schedule after the Term Loan DIP Facility Claims and First Lien Credit Agreement Claims have been indefeasibly paid in full;

  o (b) to the extent a Credit Bid Sale occurs, up to the Allowed Amount of such Holder's Second Lien Credit Agreement Claim in available Credit Bid Sale Consideration, if any, in accordance with the Second Lien Allocation Schedule after the Term Loan DIP Facility Claims and First Lien Credit Agreement Claims have been indefeasibly paid in full;

  o (c) to the extent the Debtors reorganize pursuant the Equitization Scenario and the Second Lien Credit Agreement Claims have not been satisfied in full, its Pro Rata share of available Second Lien Equitization Consideration, if any, in accordance with the Second Lien Allocation Schedule after the Term Loan DIP

Facility Claims and First Lien Credit Agreement Claims have been indefeasibly paid in full; and/or

o   any funds payable in accordance with <u>Article VIII.J.1</u> of the Plan, including cash and proceeds of any assets not included in a Third Party Sale, Credit Bid Sale, and/or Equitization Scenario up to the Allowed Amount of such Holder's Second Lien Credit Agreement Claim after Term Loan DIP Facility Claims and First Lien Credit Agreement Claims have been indefeasibly paid in full.

- Each Holder of an Allowed Non-Extending Second Lien Credit Agreement Claim shall receive:

  o   (a) to the extent a Third Party Sale occurs, up to the Allowed Amount of such Holder's Non-Extending Second Lien Claim in available Third Party Sale Consideration, if any, in accordance with the Second Lien Allocation Schedule after the Term Loan DIP Facility and First Lien Credit Agreement Claims have been indefeasibly paid in full;

  o   (b) to the extent a Credit Bid Sale occurs, up to the Allowed Amount of such Holder's Non-Extending Second Lien Credit Agreement Claim in available Credit Bid Sale Consideration, if any, in accordance with the Second Lien Allocation Schedule after the Term Loan DIP Facility Claims and First Lien Credit Agreement Claims have been indefeasibly paid in full; and/or

  o   (c) to the extent the Debtors reorganize pursuant the Equitization Scenario and the Non-Extending Second Lien Credit Agreement Claims have not been satisfied in full, its Pro Rata share of available Non-Extending Second Lien Equitization Consideration, if any, in accordance with the Second Lien Allocation Schedule after the Term Loan DIP Facility Claims and First Lien Credit Agreement Claims have been indefeasibly paid in full; and/or

  o   (d) any funds payable in accordance with <u>Article VIII.J.1</u> of the Plan, including cash and proceeds of any assets not included in a Third Party Sale, Credit Bid Sale, and/or Equitization Scenario up to the Allowed Amount of such Holder's Second Lien Credit Agreement Claim in accordance with the Second Lien Allocation Schedule after Term Loan DIP Facility Claims and First Lien Credit Agreement Claims have been indefeasibly paid in full.

- Each Holder of an Allowed General Unsecured Claim shall receive: (a) its Pro Rata share of the GUC Recovery Pool; and (b) to the extent a Third Party Sale occurs, its Pro Rata share of the Contingent Distribution Amount (if any); *provided* that, in accordance with the Global Settlement, the Term Loan DIP Lenders and the Consenting Credit Agreement Lenders shall not share in the distributions made to Holders of General Unsecured Claims on account of any deficiency claims that might be asserted by such lenders under the applicable DIP Documents and/or Credit Agreements.

- Each Holder of an Allowed Term Loan Deficiency Claim shall receive its Pro Rata share of the Debtors' cash on hand after the Claims in Classes 1–5 have been indefeasibly paid in full, excluding the GUC Recovery Pool, Contingent Distribution Amount and Wind-Down Amount.

- Section 510(b) Claims shall be canceled, released, discharged and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Section 510(b) Claims shall not receive any distribution on account of such Section 510(b) Claims.

- On the Effective Date, (x) in the Equitization Scenario, each Intercompany Claim shall be, at the option of the Debtors (with the consent of the Required Consenting Stakeholders) or the Reorganized Debtors, as applicable, either Reinstated or canceled and released without any distribution, or (y) if there is no Equitization Scenario, each Intercompany Claim shall be canceled and released without any distribution.

- Subject to the Restructuring Transactions, on the Effective Date, (x) in the Equitization Scenario, Intercompany Interests shall be, at the option of the Debtors (with the reasonable consent of the Required Consenting Stakeholders) or the Reorganized Debtors, as applicable, either Reinstated or cancelled and released without any distribution, or (y) if there is no Equitization Scenario, Intercompany Interests shall be cancelled and released with no distribution.

- On the Effective Date, all Existing Equity Interests shall be canceled, released and extinguished, and will be of no further force or effect.]

12.     In accordance with Bankruptcy Code section 1123, the Plan classifies Holders of Claims and Interests into certain Classes for all purposes, including with respect to voting on the Plan.  The following chart represents the classification of all Claims against and Interests in each Debtor pursuant to the Plan:

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 3 | First Lien Credit Agreement Claims | Impaired | Entitled to Vote |
| 4 | Second Lien Credit Agreement Claims | Impaired | Entitled to Vote |
| 5 | Non-Extending Second Lien Credit Agreement Claims | Impaired | Entitled to Vote |

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Term Loan Deficiency Claims | Impaired | Entitled to Vote |
| 8 | Section 510(b) Claims | Impaired | Deemed to Reject |
| 9 | Intercompany Claims | Unimpaired / Impaired | Presumed to Accept / Deemed to Reject |
| 10 | Intercompany Interests | Unimpaired / Impaired | Presumed to Accept / Deemed to Reject |
| 11 | Existing Equity Interests | Impaired | Deemed to Reject |

13.     Holders of Claims in Class 3 (First Lien Credit Agreement Claims), Class 4 (Second Lien Credit Agreement Claims), Class 5 (Non-Extending Second Lien Credit Agreement Claims), Class 6 (General Unsecured Claims) and Class 7 (Term Loan Deficiency Claims) (the "Voting Classes") are entitled to vote on the Plan and will receive Solicitation Packages.

14.     Holders of Claims or Interests, as applicable, in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 8 (Section 510(b) Claims), Class 9 (Intercompany Claims), Class 10 (Intercompany Interests) and Class 11 (Existing Equity Interests) (collectively, the "Non-Voting Classes") are not entitled to vote on the Plan and will not receive a Solicitation Package. Instead, Holders of Claims in Classes 1 and 2 will receive a Presumed to Accept Notice, and Holders in Classes 7 and 10 will receive a Presumed to Reject Notice.

**Basis for Relief**

I.     **The Court Should Conditionally Approve the Disclosure Statement.**

15.     Pursuant to Bankruptcy Code section 1125, the proponent of a proposed chapter 11 plan must provide holders of impaired claims and interests entitled to vote on the plan "adequate information" regarding that plan.  "Adequate information" means information that is "reasonably practicable" to permit "informed judgment" by impaired creditors and interest holders entitled to

11

vote on the plan.  *See* 11 U.S.C. § 1125(a)(1); *see also In re Divine Ripe, L.L.C.*, 554 B.R. 395, 401-02 (Bankr. S.D. Tex. 2016) (citing *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984)).

16.     The Disclosure Statement contains adequate information in sufficient detail to permit voting creditors to make an informed judgment about the Plan, including information regarding:  (a) the Debtors' corporate history, business operations and prepetition capital structure; (b) the events leading to the commencement of the chapter 11 cases; (c) material events in the chapter 11 cases, including the Global Settlement; (d) the classification and treatment of Claims and Interests; (e) the potential sources of consideration for Plan distributions and the means for implementing the Plan; (f) provisions governing distributions; (g) the treatment of executory contracts and unexpired leases; (h) the releases, injunction and exculpation provisions under the Plan, which are conspicuously displayed in accordance with Bankruptcy Rule 3016(c); (i) the statutory requirements for confirmation; (j) risk factors related to the Plan; and (k) certain U.S. federal tax consequences arising from implementation of the Plan.

17.     The Disclosure Statement thus contains sufficient information for a reasonable person to make an informed judgment about the Plan and complies with Bankruptcy Code section 1125.  *See Divine Ripe, L.L.C.*, 554 B.R. at 401-02.  The Debtors request that the Court conditionally approve the Disclosure Statement as containing "adequate information" within the meaning of Bankruptcy Code section 1125 for solicitation purposes only.  The Debtors also request that the Court determine (on a final basis) at the Combined Hearing (as defined below) that the Disclosure Statement contains "adequate information" within the meaning of Bankruptcy Code section 1125.  In connection with Confirmation of the Plan, the Debtors will provide the necessary

support for the Court to determine the adequacy of the Disclosure Statement and that the Debtors have met the requirements of Bankruptcy Code section 1125.

18.     Additionally, Section P of the Complex Case Procedures provides that the Court may consider motions seeking conditional approval of a disclosure statement so long as such motions include a proposed order that: (a) finally approves the balloting and voting procedures to be utilized; (b) finally approves the form of notice to be provided to creditors and interest holders of the debtors; (c) finally approves the forms of ballots which will be provided to creditors and interest holders entitled to vote on the proposed plan; (d) establishes a record date pursuant to Bankruptcy Rules 3017(d) and 3018(a); and (e) establishes a voting deadline. This Motion and the proposed Disclosure Statement Order comply with these requirements of the Complex Case Procedures and the other requirements of the Bankruptcy Rules.

## II.     The Court Should Approve the Setting of Certain Dates and Deadlines Set Forth in the Plan Confirmation Schedule.

### A.     The Combined Hearing.

19.     Bankruptcy Code section 1128 provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan" and that "[a] party in interest may object to confirmation of a plan." 11 U.S.C. § 1128; *see also* Fed. R. Bankr. P. 3017(c) ("[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation.").

20.     Bankruptcy Code section 105(d)(2)(B)(vi) expressly authorizes a court to "issue an order . . . that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan" where the court deems a combined hearing to be "appropriate to ensure that the case is handled expeditiously and economically." *See* 11 U.S.C. § 105(d)(2)(B)(vi); *see also In re Gulf Coast Oil Corp.*, 404 B.R. 407, 425

(Bankr. S.D. Tex. 2009) (holding that Bankruptcy Code section 105(d) authorizes the court to hold combined hearings for disclosure statements and plans).

21.     Section P of the Complex Case Procedures authorizes a plan proponent to file a motion for conditional approval of a disclosure statement and approval of solicitation procedures and deadlines in connection with solicitation and confirmation of a chapter 11 plan.  *See also* Bankruptcy Local Rule 3016-2.

22.     An expeditious confirmation process and a single hearing on the Plan and Disclosure Statement are appropriate to save estate resources and maximize distributions for creditors.  The Debtors accordingly request that the Court schedule a combined hearing on both the adequacy of the Disclosure Statement and Confirmation of the Plan for August 9, 2022 at 2:00 p.m. (prevailing Central Time) (the "Combined Hearing").   The Debtors propose that the Combined Hearing may be continued from time to time with the permission of the Court without further notice other than by such continuance being announced in open court or by a notice of reset hearing being filed with the Court and served on parties entitled to notice under Bankruptcy Rule 2002 or otherwise.

### B.      The Combined Hearing Notice.

23.     The Debtors' proposed form of Combined Hearing Notice is attached as Exhibit 1 to the Disclosure Statement Order.  Among other things, the Combined Hearing Notice sets forth a summary of the time and place of the Combined Hearing, the procedures associated with objections to the adequacy of the Disclosure Statement, which Classes under the Plan are entitled to vote, the procedures for voting creditors to vote to accept or reject the Plan and options for obtaining and reviewing electronic or paper copies of the Plan and Disclosure Statement and any other documents contained in the Solicitation Packages for interested parties who have not received full Solicitation Packages.

24.     The proposed Combined Hearing Notice also informs Holders of Claims and Interests of the procedures for objecting to Confirmation of the Plan and/or requesting modifications to the Plan.  The Combined Hearing Notice provides that any objection must:  (a) be in writing; (b) conform to the Bankruptcy Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest; (d) state with particularity the basis and nature of any objection to the Plan; (e) propose a modification to the Plan that would resolve such objection (if applicable); and (f) be filed by the Plan and Disclosure Statement Objection Deadline (as defined below).

25.     The Debtors propose to post the Combined Hearing Notice on the restructuring website maintained by the Debtors' Solicitation Agent, available at https://cases.ra.kroll.com/SungardAS/.

26.     The Debtors will provide service of the Combined Hearing Notice to all parties required to be notified under Bankruptcy Rule 2002, Bankruptcy Local Rule 2002-1 (the "2002 List") and Bankruptcy Local Rule 3016-2 as of the Voting Record Date (as defined below) three (3) Business Days after entry of the Disclosure Statement Order or as soon as reasonably practicable thereafter.  Where the Debtors have confirmed valid electronic mail addresses for parties on the 2002 List, the Debtors request authorization to serve any notices for which the Debtors seek approval in this Motion through such electronic mail service to parties on the 2002 List.

27.     With respect to addresses from which the Combined Hearing Notice, Solicitation Package and/or any other notices for which the Debtors seek approval in this Motion are returned as undeliverable, the Debtors request that they be excused from redistributing such notices and/or Solicitation Packages to those entities listed at such addresses.  Additionally, the Debtors request

that they be excused from sending the Combined Hearing Notice, Solicitation Package and/or any other notices for which the Debtors seek approval in this Motion to any address that the Debtors have sent a notice since the Petition Date, which notice was returned as undeliverable, unless the Debtors have been provided with updated address information.  The Debtors also request that the Court determine that failure to distribute documents to such entities does not constitute inadequate notice of the Combined Hearing Notice, the Solicitation Package, the Voting Deadline (as defined below) and/or a violation of the Bankruptcy Rules.  Further, if a Holder of a Claim or Interest has changed its mailing address after the Petition Date, the burden should be on the Holder of the Claim or Interest—not the Debtors— to advise the Debtors of the new address.  *See In re Marshall*, 219 B.R. 687, 691 (Bankr. M.D.N.C. 1997) (holding that notice sent to last known address is reasonable where sender knew recipient had moved but recipient had not provided new address to sender).  Additionally, for purposes of serving the Solicitation Packages, the Debtors are authorized to rely on the address information for Voting and Non-Voting Classes as compiled, updated and maintained by the Solicitation Agent as of the Voting Record Date.  The Debtors and the Solicitation Agent are not required to conduct any additional research for updated addresses based on undeliverable notices (including Ballots) sent in connection with the solicitation mailing.[5]

### C.   Publication of the Combined Hearing Notice.

28.   A bankruptcy court may order notice by publication "if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Fed. R. Bankr. P. 2002(l).  Courts authorize debtors to provide notice by publication where notice by mail is impracticable because

---

[5]   The Solicitation Agent is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, at which time the Solicitation Agent is authorized to destroy and/or otherwise dispose of all paper copies of Ballots, printed solicitation materials (including unused copies of the Solicitation Package) and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

a debtor cannot ascertain the identity of potential claimants.  *See, e.g.*, *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (holding that constructive notice is adequate as to a debtor's unknown creditors).

29.     The Debtors propose to publish the Combined Hearing Notice as soon as reasonably practicable following entry of the Disclosure Statement Order in the national edition of *The New York Times* and any such other local publication that the Debtors deem appropriate and disclose in their affidavit of service.  The proposed form of Combined Hearing Notice, the notice period provided after service of the Combined Hearing Notice, the publication of the Combined Hearing Notice and the service of the notice of the Motion will provide creditors with sufficient notice of the Combined Hearing, given the facts and circumstances of these chapter 11 cases.

        **D.**      **The Plan Confirmation Schedule.**

        **1.**      **The Voting Record Date.**

30.     Bankruptcy Rule 3017(d) provides that, upon approval of a disclosure statement, except to the extent that the Court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders, a debtor shall mail to all creditors and equity security holders and the United States Trustee, a copy of the plan, the disclosure statement, notice of the voting deadline and such other information as the court may direct.  *See* Fed. R. Bankr. P. 3017(d). For purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the Court, for cause, after notice and a hearing."  *Id.*

31.     The Debtors request that the Court establish the voting record date as June 29, 2022 (the "Voting Record Date") for determining (a) which Holders of Claims are entitled to vote on

the Plan and (b) whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of the Claim.  Cause exists under Bankruptcy Rule 3018(a) to establish the Voting Record Date.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date.  For the avoidance of doubt, a Holder of a Claim will only be entitled to receive a Solicitation Package on account of a Claim arising from the rejection of an Executory Contract or Unexpired Lease if the Claim is filed by the Voting Record Date.

### 2.     The Voting Deadline.

32.     Bankruptcy Rule 3017(c) provides, in relevant part, that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan . . . ."  Fed. R. Bankr. P. 3017(c).  The Debtors request that the Court establish **August 3, 2022, at 4:00 p.m. (prevailing Central Time)** as the deadline for voting on the Plan (the "<u>Voting Deadline</u>").  The Debtors anticipate completion of solicitation within three (3) Business Days after entry of the Disclosure Statement Order or as soon as reasonably practicable thereafter.  The Debtors propose that, for votes to be counted, all Ballots must be properly executed, completed and delivered in the manner described in the Solicitation Procedures so that they are ***actually received no later than the Voting Deadline*** by the Solicitation Agent.  The Combined Hearing Notice will prominently state the Voting Deadline.

### 3.     The Plan and Disclosure Statement Objection Deadline.

33.     Pursuant to Bankruptcy Rule 3020(b)(l), objections to confirmation of a plan must be filed and served "within a time fixed by the Court."  Fed. R. Bankr. P. 3020(b)(1).  The Debtors request that the Court establish **August 3, 2022, at 4:00 p.m. (prevailing Central Time)** as the deadline (the "<u>Plan and Disclosure Statement Objection Deadline</u>") by which objections to the

Plan and Disclosure Statement, if any, must be filed and served in accordance with the Combined Hearing Notice.  The proposed Plan and Disclosure Statement Objection Deadline will afford the Court and all parties in interest reasonable time to consider the objections and proposed modifications prior to the Combined Hearing.  The Debtors also request that they be permitted to file a reply, if any, and brief in support of Confirmation of the Plan and adequacy of the Disclosure Statement, in either a single document or multiple documents prior to the Combined Hearing.

**III.    The Court Should Approve the Solicitation Procedures and the Solicitation Package.**

34.    The Debtors seek approval of the Solicitation Procedures described herein and set forth in <u>Exhibit 2</u> to the Disclosure Statement Order to efficiently solicit votes in connection with the Plan in a manner consistent with the Bankruptcy Code and the Bankruptcy Rules.  The Solicitation Procedures are tailored to allow the Debtors to solicit votes to accept or reject the Plan effectively.[6]  Further, the Solicitation Procedures provide all Holders of Claims with adequate notice of the solicitation process and the relevant dates set forth in the Plan Confirmation Schedule.

**A.    The Balloting Process.**

35.    The Debtors, through the Solicitation Agent, will:  (a) distribute the Solicitation Packages and solicit votes on the Plan in compliance with the Solicitation Procedures; (b) receive, tabulate and report on Ballots; and (c) respond to inquiries relating to the solicitation and voting process, including all matters related thereto.  Further, the Debtors intend to prepare and file with the Court a voting report (the "<u>Voting Report</u>") by August 8, 2022, which is one (1) Business Day before the Combined Hearing.

---

[6]    To the extent that circumstances require modifications of, or amendments to, the Solicitation Procedures, the Debtors reserve the right to supplement or amend the Solicitation Procedures to further facilitate the solicitation of the Plan in their reasonable business judgment and in consultation with the Committee and without further Court order.

36.     The Debtors request that the Solicitation Agent be authorized (to the extent not already authorized by another order of the Court) to assist the Debtors in (a) distributing the Solicitation Packages, (b) receiving, tabulating and reporting on Ballots cast to accept or reject the Plan by Holders of Claims, (c) responding to inquiries from Holders of Claims or Interests and other parties in interest relating to the Plan and Disclosure Statement, the Ballots, the Solicitation Packages and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors and equity holders regarding the Plan. The Solicitation Agent may also contact parties that submit incomplete or otherwise deficient ballots to make a reasonable effort to cure such deficiencies; *provided*, *however*, that the Solicitation Agent is not obligated to do so.

37.     The Debtors request that the Solicitation Agent be authorized to accept Ballots and Opt-Out Forms (as defined below) via electronic online transmission through a customized online balloting portal on the Debtors' case website to be maintained by the Solicitation Agent (the "E-Ballot Portal").  Parties entitled to vote through the E-Ballot Portal may cast an electronic Ballot or Opt-Out Form and electronically sign and submit the Ballot or Opt-Out Form instantly by utilizing the E-Ballot Portal.  The encrypted data and audit trail created by such electronic submission will become part of the record of any Ballot or Opt-Out Form submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective. The Debtors request that Ballots or Opt-Out Forms submitted via the customized online balloting portal shall be deemed to contain an original signature.  The E-Ballot Portal is the sole manner in which Ballots or Opt-Out Forms will be accepted via electronic or online transmission.  Ballots or

Opt-Out Forms submitted by facsimile, email or other means of electronic transmission will not be counted.

38.      The Debtors request that the Court approve the voting and tabulation procedures described in paragraph IV of the Solicitation Procedures, which conform to Bankruptcy Code section 1126(c) and Bankruptcy Rule 3018(a) (the "Voting and Tabulation Procedures"). Bankruptcy Code section 1126(c) provides that "[a] class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan."  11 U.S.C. § 1126(c).

39.      In tabulating votes, the Debtors propose that paragraph IV.2 of the Solicitation Procedures shall be used to determine the amount of the Claim associated with each Holder's vote. The amount of the Claim established pursuant to paragraph IV.2 of the Solicitation Procedures shall control for voting purposes only and shall not constitute the Allowed amount of any Claim for purposes of distribution under the Plan or the amount of any Claim for any other purpose.  The Debtors also propose to use the voting procedures and standard assumptions in tabulating the Ballots as set forth in paragraph IV of the Solicitation Procedures.  The Voting and Tabulation Procedures comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules and should be approved.

### B.      Contents and Distribution of the Solicitation Package.

40.      Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests, as applicable, for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a chapter 11 plan.  *See* Fed. R. Bankr. P. 3017(d) (providing that, after approval of a disclosure statement, a debtor must transmit the plan or a court-

21

approved summary of the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed and any other information that the Court may direct to certain holders of claims).  In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Bankruptcy Rule 2002(b), and a form of Ballot conforming to the appropriate Official Form No. 314 (the "Official Form") shall be mailed to creditors entitled to vote on the chapter 11 plan.

41.     Subject to the Court's approval of the relief requested in this Motion, the Debtors will cause the Solicitation Packages to be distributed on or before the Solicitation Deadline. Specifically, the Solicitation Package shall contain copies of the following materials:

    a.    a copy of the Plan and Disclosure Statement, as conditionally approved by the Court (with all exhibits thereto);

    b.    the Disclosure Statement Order (without exhibits, except the Solicitation Procedures annexed as Exhibit 2 to the Disclosure Statement Order);

    c.    the Solicitation Procedures;

    d.    the Combined Hearing Notice;

    e.    the form of Ballot for the Voting Class in which such Holder holds a Claim, in substantially the forms of the Ballots annexed as Exhibit 3, Exhibit 4, Exhibit 5, Exhibit 6 and Exhibit 7 to the Disclosure Statement Order;

    f.    a pre-addressed, postage pre-paid reply envelope; and

    g.    any supplemental documents that the Debtors may file with the Court or that the Court orders to be made available.

The distribution of the Solicitation Packages by the Solicitation Deadline will provide all Holders of Claims entitled to vote on the Plan with the requisite materials and sufficient time to make an informed decision with respect to the Plan. *See* Fed. R. Bankr. P. 3017(d).

42.     Due to the voluminous nature of certain documents, the Debtors request that they be authorized to distribute the Plan and Disclosure Statement and the Disclosure Statement Order (without exhibits, except the Solicitation Procedures annexed as Exhibit 2 to the Disclosure Statement Order) to Holders of Claims entitled to vote on the Plan by providing instructions as part of the Solicitation Package for accessing these documents through the Debtors' restructuring website (https://cases.ra.kroll.com/SungardAS/).  Holders of Claims may also request a hard or electronic copy of the Plan and Disclosure Statement and the Disclosure Statement Order (without exhibits), and the Solicitation Agent will send the requested materials to such Holders of Claims within three (3) Business Days of receipt of such request or as soon as reasonably practicable thereafter.  Only the Ballots, the return envelope and the Combined Hearing Notice will be provided in paper format.  The Combined Hearing Notice will include a website link directing recipients to the electronic format of the documents and providing recipients directions for obtaining a print or email copy of such documents if they so desire.  Distribution in this manner will translate into significant monetary savings for the Debtors' estates by reducing printing and postage costs (the Plan and Disclosure Statement and the proposed Disclosure Statement Order collectively total hundreds of pages).  Further, all documents will be available in print and email on request to the Solicitation Agent and electronically, free of charge, at the Debtors' restructuring website at https://cases.ra.kroll.com/SungardAS/.

**IV.    The Court Should Approve the Forms of the Ballots.**

43.     The Debtors propose to solicit votes from Holders of Claims in the Voting Classes. All votes to accept or reject the Plan must be cast on the appropriate Ballot.  In accordance with

Bankruptcy Rule 3018(c), the Debtors will distribute Ballots to Holders of Claims in the Voting Classes, substantially in the forms attached to the Disclosure Statement Order as <u>Exhibit 3</u>, <u>Exhibit 4</u>, <u>Exhibit 5</u>, <u>Exhibit 6</u> and <u>Exhibit 7</u> to tabulate acceptances and rejections of the Plan.

44.     The forms of the Ballots are based on the Official Form, which has been modified to:  (a) address the particular circumstances of these chapter 11 cases; and (b) include certain additional information that the Debtors believe to be relevant and appropriate for the Voting Classes.  *See* Fed. R. Bankr. P. 3017(d) (a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the Plan).  The Ballots include a box that Holders of Claims can check to opt out of the third party release provisions in the Plan.  The forms of the Ballots comply with Bankruptcy Rule 3018(c), and the Debtors request authority to distribute the Ballots to Holders of Claims in the Voting Classes.

**V.     The Court Should Approve the Form of Notices to Classes Presumed to Accept or Reject the Plan.**

45.     In compliance with Bankruptcy Code section 1123(a)(1) and as reflected in Article VI of the Plan and Disclosure Statement, Administrative Claims, DIP Facility Claims, Professional Fee Claims and Priority Tax Claims have not been classified and will be Unimpaired under the Plan except as otherwise agreed to by the Holder of such Claim (collectively, the "<u>Unclassified Claims</u>").  *See* 11 U.S.C. § 1123(a)(1) (providing for classification of claims other than administrative and priority tax claims).  Holders of Unclassified Claims are not entitled to vote on the Plan and will not be solicited to vote on the Plan.  Additionally, Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan (the "<u>Unimpaired Accepting Classes</u>").  *See* 11 U.S.C. § 1126(f).  As such, Holders of Claims in the Unimpaired Accepting Classes are also not entitled to vote on the Plan and will not be solicited to vote on the Plan.

46.     In light of the non-voting status attributed to Holders of Claims in the Unimpaired Accepting Classes, the Debtors intend to provide such Holders with the Presumed to Accept Notice substantially in the form attached to the Disclosure Statement Order as <u>Exhibit 8</u> in lieu of the Solicitation Package and in addition to the Combined Hearing Notice.  The Presumed to Accept Notice will explain to such Holders their non-voting status and also provide instructions regarding how to obtain certain materials with respect to the Solicitation Package (excluding Ballots) from the Debtors and how to elect to opt out of the third party release provisions in the Plan, using the opt-out form (the "<u>Opt-Out Form</u>").  Pursuant to Bankruptcy Rule 3017(d), the Court may order that the Debtors need only provide Holders of Claims in Unimpaired Classes with notice of their non-voting status, in addition to the Combined Hearing Notice and the notice of the name and address of the agent from whom they may request a Solicitation Package.  The Presumed to Accept Notice complies with the Bankruptcy Code and should be approved.

47.     Additionally, Class 8 (Section 510(b) Claims) and Class 11 (Existing Equity Interests) are Impaired and presumed to have rejected the Plan (collectively, the "<u>Impaired Deemed Rejecting Classes</u>").  Holders of Claims or Interests in the Impaired Deemed Rejecting Classes are not entitled to vote on the Plan and will not be solicited to vote on the Plan.  The Debtors will instead send such Holders the Presumed to Reject Notice, substantially in the form attached to the Disclosure Statement Order as <u>Exhibit 9</u>, in lieu of the Solicitation Package and in addition to the Combined Hearing Notice.  The Presumed to Reject Notice will explain to Holders of Claims or Interests in Impaired Deemed Rejecting Classes their non-voting status and also provide instructions regarding how to obtain certain materials with respect to the Solicitation Package (excluding Ballots) from the Debtors and how to elect to opt out of the third party release

provisions in the Plan.  The Presumed to Reject Notice complies with the Bankruptcy Code and should be approved.

48.     In addition, the Debtors request that they not be required to mail Solicitation Packages or other solicitation materials, including Presumed to Accept Notices, Presumed to Reject Notices or Opt-Out Forms to (a) Holders of Claims that have already been paid in full during the chapter 11 cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by the Court and (b) any Holders of Claims in Class 9 (Intercompany Claims) and Holders of Interests in Class 10 (Intercompany Interests).

49.     The Plan and Disclosure Statement, the Combined Hearing Notice, the Ballots, the Presumed to Accept Notice and the Presumed to Reject Notice provide all parties in interest with sufficient notice regarding the settlement, release, exculpation and injunction provisions contained in the Plan in compliance with Bankruptcy Rule 3016(c) and provide Holders of Claims and Interests with the opportunity to opt out of the third party release provisions in the Plan.  Further, Article XII of the Plan and Disclosure Statement also describes in detail entities subject to or providing a release under the Plan, the Claims and Causes of Action so released and the entities entitled to exculpation under the Plan in conspicuous, bold typeface.  Each of the Ballots and the Combined Hearing Notice describes in detail entities subject to or providing a release under the Plan and the Claims and Causes of Action so released in conspicuous, bold typeface.  Each of the Disclosure Statement, Ballots and Combined Hearing Notice conspicuously states that any party that does not opt out of the releases or specifically object to its inclusion as a Releasing Party will be bound by the Plan's release provisions.  The Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released or exculpated by the Plan.

**VI.    The Court Should Approve the Assumption and Rejection Notices to Counterparties to Executory Contracts and Unexpired Leases.**

50.    Article IX of the Plan and Disclosure Statement provides that on the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed or assumed and assigned, including any employee benefit plans, severance plans and other Executory Contracts under which employee obligations arise, shall be deemed, in the Equitization Scenario, to be assumed and, in any non-Equitization Scenario, rejected, without the need for any further notice to or action, order or approval of the Bankruptcy Court, as of the Effective Date, pursuant to Bankruptcy Code section 365, unless such Executory Contract or Unexpired Lease (a) was previously assumed, assumed and assigned or rejected (including in connection with any Sale Transaction); (b) was previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to assume or assume and assign Filed on or before the Confirmation Date or (d) is designated specifically, or by category, as an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases, as applicable.  *See* Plan, Article IX.A.  To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of assumption or rejection of their Executory Contract or Unexpired Lease (and any corresponding Cure amount) pursuant to the Plan, the Debtors will mail an Assumption Notice or a Rejection Notice, as appropriate, on or before July 28, 2022.

51.    Pursuant to the Bidding Procedures Order, on June 3, 2022, the Debtors filed and served the Assumption and Assignment Notice to notify all counterparties to Executory Contracts and Unexpired Leases that their contracts may be assumed in connection with a Sale Transaction. The Assumption and Assignment Notice set forth the Cure Costs, if any, that the Debtors believed were required to be paid to the applicable counterparty to cure any monetary defaults under each

contract pursuant to Bankruptcy Code section 365. Any counterparty was permitted to object to the proposed assumption, assignment, or Cure Cost by filing an objection consistent with the procedures set forth in the Assumption and Assignment Notice. Pursuant to the Bidding Procedures Order, if a counterparty failed to timely file an objection with the Court, (a) the counterparty shall be deemed to have consented to the applicable Cure Costs set forth in the Assumption and Assignment Notice and forever shall be barred from asserting any objection with regard to such Cure Costs or any other claims related to the applicable contract, and (b) the applicable Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable contracts pursuant Bankruptcy Code section 365(b), notwithstanding anything to the contrary in any such contract, or any other document

52. The Debtors shall file the Schedule of Assumed Contracts and Unexpired Leases as part of the Plan Supplement to the extent that the Debtors determine the such contracts shall be assumed or assumed and assigned in connection with the Plan. The Cure Claim with respect to any contract set forth on the Schedule of Assumed Contracts and Unexpired Leases shall be the Cure Claim as previously established pursuant to the Bidding Procedures Order and Assumption and Assignment Notice and counterparties shall not have an additional opportunity to object or otherwise contest the assumption, assignment, or Cure Claim. If no objection to the Cure amount or the proposed assumption and assignment of any Executory Contract or Unexpired Lease was previously filed in connection with the Bidding Procedures Order, then such party will be deemed to have stipulated that the applicable Cure amount as determined by the Debtors was correct, and such party will be forever barred, estopped and enjoined from asserting any additional cure amount under the proposed assigned Executory Contract or Unexpired Lease or from objecting to the

proposed assumption and assignment thereof; *provided* that the foregoing shall not relieve any such counterparty to an Executory Contract or Unexpired Lease of its obligation to file a proof of claim to the extent that its Executory Contract or Unexpired Lease is rejected pursuant to the Plan.

53.     The Debtors shall file the Schedule of Rejected Contracts and Unexpired Leases as part of the Plan Supplement to the extent that the Debtors determine that such contracts shall be rejected in connection with the Plan.  For the avoidance of doubt, the Debtors may determine to reject an Executory Contract or Unexpired Lease regardless of whether such contract was identified on any prior notice providing for assumption or assumption and assignment, including the Assumption and Assignment Notice filed pursuant to the Bidding Procedures Order. In addition, the Rejection Notice will include instructions for filing a Claim (if any) for rejection damages resulting from the rejection of an Executory Contract or Unexpired Lease.  Further, to ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of the Combined Hearing, the Debtors will serve such parties with the Combined Hearing Notice.  The Assumption Notice and Rejection Notice comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules and should be approved.

## **Non-Substantive Modifications**

54.     The Debtors request authorization to make non-substantive or immaterial changes to the Plan and Disclosure Statement, Ballots, Combined Hearing Notice and related documents without further order of the Court, including changes to correct typographical and grammatical errors and to make conforming changes among the Plan and Disclosure Statement and any other materials in the Solicitation Package before their distribution.

## **Notice**

55.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel for the Committee; (c) counsel for

PNC Bank, National Association, as the administrative agent under the Debtors' prepetition revolving credit facility and ABL DIP facility; (d) counsel for Alter Domus Products Corp., as the administrative agent under each of the Debtors' prepetition term loan facilities; (e) counsel for the ad hoc group of term loan lenders and the term loan DIP lenders; (f) counsel for Acquiom Agency Services LLC, as term loan DIP agent under the Debtors' term loan DIP facility; (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) the United States Securities and Exchange Commission; (j) the Environmental Protection Agency and all similar state environmental agencies for states in which the Debtors conduct business; (k) the state attorneys general in the states where the Debtors conduct their business operations; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no further notice is necessary.

WHEREFORE, the Debtors request entry of an order, substantially in the form of the Disclosure Statement Order filed with this Motion, granting the relief requested herein and granting such other relief as the Court deems just, proper and equitable.

Dated: June 3, 2022
Houston, Texas

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Rebecca Blake Chaikin (S.D. Bar No. 3394311)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email:  mcavenaugh@jw.com
           jwertz@jw.com
           rchaikin@jw.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Philip C. Dublin (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
Kevin Zuzolo (admitted *pro hac vice*)
Melanie A. Miller (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email:  pdublin@akingump.com
           mlahaie@akingump.com
           kzuzolo@akingump.com
           melanie.miller@akingump.com

-and-

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr. (TX Bar No. 00793386)
Lacy M. Lawrence (TX Bar No. 24055913)
Zach D. Lanier (TX Bar No. 24124968)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email:  mbrimmage@akingump.com
           llawrence@akingump.com
           zlanier@akingump.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## Certificate of Service

I certify that on June 3, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Matthew D. Cavenaugh
Matthew D. Cavenaugh