**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SUNGARD AS NEW HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 22-90018 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF
AN ORDER (I) AUTHORIZING THE DEBTORS TO ENTER
INTO THE SETTLEMENT STIPULATION WITH CHICAGO
ENTERPRISE, LLC AND PERFORM THEIR OBLIGATIONS
THEREUNDER AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested no later than 3:30 p.m. on October 31, 2022.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on October 31, 2022 at 3:30 p.m. (prevailing Central Time) in Courtroom 400, 4th Floor, 515 Rusk Street, Houston, TX 77002. Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's home page. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' tax identification numbers, are: InFlow LLC (9489); Sungard AS New Holdings, LLC (5907); Sungard AS New Holdings II, LLC (9169); Sungard AS New Holdings III, LLC (3503); Sungard Availability Network Solutions Inc. (1034); Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee (3886); Sungard Availability Services Holdings (Canada), Inc. (2679); Sungard Availability Services Holdings (Europe), Inc. (2190); Sungard Availability Services Holdings, LLC (6403); Sungard Availability Services Technology, LLC (9118); Sungard Availability Services, LP (6195); and Sungard Availability Services, Ltd. (4711). The location of the Debtors' service address for purposes of these chapter 11 cases is: 565 E Swedesford Road, Suite 320, Wayne, PA 19087.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state the following in support of this motion (the "<u>Motion</u>"):[2]

### Preliminary Statement

1. By this Motion, the Debtors seek approval of a settlement with Chicago Enterprise, LLC d/b/a Element Critical ("<u>Element Critical</u>"), which owns and operates two data centers in Wood Dale, Illinois (the "<u>Data Centers</u>"). At the Data Centers, the Debtors purchase colocation services from Element Critical, and the Debtors provide network and managed services to customers. Following extensive, arm's-length negotiations, the Debtors have reached agreement with Element Critical on a series of transactions that will, among other things, (a) eliminate prepetition claims against the Debtors by Element Critical, (b) significantly reduce the Debtors' postpetition obligations to Element Critical by more than $400,000.00 and (c) provide for the orderly transition of certain customers from the Debtors to Element Critical through the assumption and assignment of the Debtors' customer agreements at the Data Centers to Element Critical. The parties' agreement is memorialized in the settlement stipulation (the "<u>Stipulation</u>") attached hereto as **Exhibit A**.

2. The Debtors believe that the relief requested in this Motion is in the best interests of the Debtors' estates, reflects a sound exercise of the Debtors' business judgment and should be approved.

### Relief Requested

3. By the Motion, the Debtors seek entry of an order, substantially in the form attached hereto (the "<u>Order</u>"), (a) authorizing the Debtors to (i) enter into the Stipulation with Element

---

[2] A description of the Debtors and their businesses, and the facts and circumstances supporting this Motion, are set forth in the *Declaration of Michael K. Robinson, Chief Executive Officer and President of the Debtors in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 7] (the "<u>First Day Declaration</u>"). Capitalized terms used but not defined herein have the meaning ascribed to such terms in the First Day Declaration.

2

Critical (the Debtors and Element Critical, the "Parties"), on the terms set forth in the Stipulation, and (ii) perform any and all obligations thereunder, including, without limitation, the assumption and assignment of the Customer Contracts (as defined below) to Element Critical and (b) granting related relief.

## Jurisdiction and Venue

4. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The bases for the relief requested herein are sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

7. On April 11, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. On the Petition Date, the Court entered an order [Docket No. 27] authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). On April 25, 2022, an official committee of unsecured

creditors (the "Committee") was appointed by the United States Trustee (the "U.S. Trustee") [Docket No. 137].

8. Also on April 11, 2022, Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee commenced proceedings (the "Canadian Proceedings") under the Companies' Creditors Arrangement Act (Canada) in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") seeking recognition of its chapter 11 case. The Canadian Court granted the relief requested on April 14, 2022 and appointed Alvarez & Marsal Canada Inc. as information officer (the "Information Officer") in the Canadian Proceedings.

9. The Debtors and their non-Debtor affiliates (collectively, the "Company") provide high availability, cloud-connected infrastructure services built to deliver business resilience to their customers in the event of an unplanned business disruption, ranging from man-made events to natural disasters. As of the Petition Date, the Debtors employed approximately 585 individuals in the United States and Canada and operated 55 facilities (comprising 24 data centers and 31 work area recovery centers), providing services to approximately 2,001 customers across the United States, the United Kingdom, Canada, Ireland, France, India, Belgium, Luxembourg and Poland. The Company generated approximately $587 million in revenue for fiscal year 2021 and, as of the Petition Date, the Debtors had approximately $424 million in aggregate principal amount of prepetition funded debt obligations.

10. On October 17, 2022, the Court entered an order confirming the *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 763, Ex. A] (the "Plan").

**The Debtors' Relationship with Element Critical**

11.     In 2018, Element Critical purchased the Data Centers from certain of the Debtors. Following the closing of the sale transaction, Element Critical and Sungard Availability Services, LP ("Sungard AS") entered into that certain master services agreement dated January 4, 2019 (including any amendments or modifications thereto, the "Master Agreement"), which provided for, among other things, the purchase of colocation services from Element Critical to Sungard AS at the Data Centers. In addition, following the sale, the Debtors continued to provide network and managed services to their historical customers at the Data Centers, both directly and by means of a pass-through relationship with Element Critical.

12.     Through these interconnected relationships, the Debtors and Element Critical regularly incur charges to the other based on the provision of services to each other and to third parties. As of the Petition Date, Element Critical has asserted that the Debtors owed Element Critical $960,172.22 in respect of services provided to Sungard AS pursuant to the Master Agreement (the "Element Critical Prepetition Claim"). In turn, as of the Petition Date, Element Critical owed the Debtors an amount equal to $316,206.00 (the "Sungard AS Prepetition Claim" and, together with the Element Critical Prepetition Claim, the "Prepetition Claims").

13.     Since the Petition Date, the claims between Element Critical and the Debtors have continued to accrue. On a postpetition basis, Element Critical has asserted that the Debtors owe Element Critical $1,227,828.20 for services provided by Element Critical to the Debtors (the "Element Critical Postpetition Claim"), and Element Critical owes the Debtors $458,900.42 for services provided by the Debtors to Element Critical (the "Sungard AS Postpetition Claim").

**The Settlement**

14. After commencing these chapter 11 cases, the Debtors determined that the services being provided at the Data Centers were burdensome and uneconomic. Given the complicated nature of the relationship between Element Critical and the Debtors, the Debtors explored the potential for a global resolution with Element Critical that would not only minimize the ongoing expense of the relationship, but also minimize any negative effects on the customers at the Data Centers through the decision of the Debtors to terminate services.[3]

15. Following arm's-length and good faith negotiations, the Debtors and Element Critical reached a commercial agreement, memorialized in the Stipulation, that will provide material monetary benefits to the Debtors' estates and ensure a smooth transition of the Debtors' customers at the Data Centers to new providers. In general, the Stipulation provides for (i) the consensual setoff and waiver of prepetition and postpetition amounts due to and from the Debtors and Element Critical and (ii) the assumption and assignment of the Customer Contracts to Element Critical (collectively, the "Transactions").

16. More specifically, the key terms of the Stipulation are as follows.[4]

---

[3] Specifically, the customer contracts at the Data Centers subject to the Stipulation are the following: (a) that certain Data Center Co-Location and Services Agreement dated December 31, 2010 (including any amendments or modifications thereto, the "Lurie Children's Hospital Master Agreement") between Sungard AS and the Ann & Robert H. Lurie Children's Hospital of Chicago (the "Lurie Children's Hospital") for the provision of certain network and managed services; (b) that certain Global Master Services Agreement dated April 1, 2013 (including any amendments and modifications thereto, the "IMRF Master Agreement") between Sungard AS and the Illinois Municipal Retirement Fund (the "IMRF") for the provision of certain network and managed services; and (c) that certain MHC Operating Limited Partnership dated August 13, 2004 (including any amendments or modifications thereto, the "MHC Master Agreement" and, together with the Lurie Children's Hospital Master Agreement and the IMRF Master Agreement, and all active schedules, service orders, exhibits, addenda, statements of work or other documents executed pursuant to such agreements, the "Customer Contracts") between Sungard AS and MHC Operating Limited Partnership ("MHC" and, together with Lurie Children's Hospital and the IMRF, the "Customers") for the provision of network and managed services.

[4] Capitalized terms used in this section but not otherwise defined have the meaning ascribed to such terms in the Stipulation. The following description of the Stipulation is qualified in its entirety by the Stipulation. In the event of any inconsistency between this summary and the Stipulation, the Stipulation controls.

6

- **Claim Waivers**. The Parties have agreed to the following:

    o *Prepetition Claims*. Element Critical shall waive the Element Critical Prepetition Claim, and Sungard AS shall waive the Sungard AS Prepetition Claim. Element Critical's Prepetition Claim shall be deemed withdrawn.

    o *Postpetition Claims*. Element Critical shall reduce the Element Critical Postpetition Claim by an amount equal to the sum of (x) $441,589.93 and (y) the Sungard AS Postpetition Claim, such that, on a net basis, the Element Critical Postpetition Claim shall be allowed in an amount not to exceed $327,337.87 (the "Allowed Postpetition Claim"), which shall be paid to Element Critical within ten (10) days from the Approval Effective Date. The Parties acknowledge and agree that the Transactions contemplated herein are based on an assumed Approval Effective Date of November 1, 2022. If the Approval Effective Date does not occur on or prior to November 1, 2022, the Parties shall cooperate in good faith on any adjustments or modifications to the Transactions, including, without limitation, the amount of the Allowed Postpetition Claim relating to any prorated postpetition claims for the month of November 2022 to be paid to Element Critical.

    o *Claim Waiver*. The Debtors and Element Critical shall waive and release any and all claims (other than as provided for in the Stipulation) that it may have against the Debtors and Element Critical arising prior to the Approval Effective Date, as applicable.

- **Assumption and Assignment of Customer Contracts**. The Debtors shall assume and assign the Customer Contracts to Element Critical, with the effectiveness of any such assignment to occur on the Approval Effective Date.[5]

- **Rejection of the Master Agreement**. The Master Agreement has been rejected pursuant to the terms of the Plan.

17.   The Debtors believe that the commercial resolution embodied in the Stipulation is in the best interests of the Debtors and their estates.

---

[5] On October 14, 2022, the Debtors filed the *First Amended Plan Supplement of (A) Executory Contracts and Unexpired Leases to Be Assumed by the Debtors Pursuant to the Plan, (B) Cure Amounts, If Any, and (C) Related Procedures in Connection therewith* [Docket No. 740], which designated the Customer Contracts as subject to assumption under the Plan. Upon the Approval Effective Date, the Customer Contracts shall be assigned to Element Critical.

**Basis for Relief**

**I.     The Stipulation Is in the Best Interests of the Debtors' Estates.**

18.     Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a). "To minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted). Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the "sound discretion" of the bankruptcy court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984).

19.     Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex 2005) (citation omitted). "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision … should only be withheld if the debtor's

judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *Richmond Leasing Co.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (citation omitted).

20. The Debtors also seek authority to enter into the Stipulation and carry out the terms of such agreement pursuant to Bankruptcy Code section 363. Specifically, Bankruptcy Code section 363 authorizes, in relevant part, a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. 11 U.S.C. § 363(b)(1). Although section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts routinely authorize the use of debtor's property if it is based upon the reasonable business judgment of the debtor. *See, e.g.*, *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

21. Based on the foregoing considerations, the Stipulation represents a fair and reasonable compromise that is in the best interest of the Debtors' estates. The Debtors' contractual arrangements with Element Critical are complex and, ultimately, burdensome to the Debtors. Notwithstanding the rejection of the Master Agreement, the Debtors would still face significant postpetition liabilities to Element Critical. Absent the Stipulation, the Debtors would confront litigation with Element Critical over the allowance of Element Critical's postpetition claims as administrative expenses. Similarly, the Debtors' relationship with Element Critical is closely intertwined with the Customers and, like the Master Agreement, the Customer Contracts likely would need to be rejected in the absence of the parties' agreements in the Stipulation. Rejecting

the Customer Contracts—which includes a contract with one of the largest children's hospitals in the United States—without any mitigation measures, could result in the Debtors being faced with litigation and challenges from the Customers that could imperil the Debtors' overall restructuring and sale efforts.

22. The Stipulation strikes a fair resolution of these potential disputes. The Debtors will obtain the benefit of a significant reduction in the potential exposure the Debtors faced under the Element Critical Postpetition Claim. Further, Element Critical's agreement to accept the assignment of the Customer Contracts from the Debtors will ensure that those Customers' services are not immediately cutoff. In short, the Debtors believe that, after evaluating all potential options, the Stipulation represents the best possible outcome for resolving Element Critical's claims and ensuring an orderly transition of the Customers to a new provider. Accordingly, the decision to enter into the Stipulation represents a reasonable exercise of the Debtors' business judgment.

23. The Stipulation also satisfies the additional factors that bankruptcy courts in this jurisdiction consider when evaluating proposed settlements. Specifically, the Fifth Circuit has set forth a three-factor balancing test that courts must consider: "(1) [t]he probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) [t]he complexity and likely duration of litigation any attendant expense, inconvenience, and delay; and (3) [a]ll other factors bearing on the wisdom of the compromise." *In re Roqumore*, 393 B.R. 474, 479 (Bankr. S.D. Tex. 2008) (citation omitted).

24. Under the rubric of the third factor, the Fifth Circuit has set forth two additional factors that bear on the decision to approve a proposed settlement. *First*, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (Matter of Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir.

1995); *see also Age Ref. Inc.*, 801 F.3d at 540 (noting the *Foster Mortgage* factors). "While the desires of the creditors are not binding, a court 'should carefully consider the wishes of the majority of the creditors.'" *Foster Mortg. Corp.*, 68 F.3d at 917 (quoting *In re Transcon. Energy Corp.*, 764 F.2d 1296, 1299 (9th Cir. 1985)). *Second*, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

25. Here, the Stipulation is the product of arm's-length negotiations among sophisticated parties with counsel and reflects an appropriate balance between the parties' respective litigation positions should any of the claims subject to the Stipulation be litigated. Litigating any of the claims subject to the Stipulation would be costly and of uncertain benefit to the Debtors' estates. The negotiated resolution set forth in the Stipulation lessens the potential administrative costs attendant to maintaining the Customer Contracts while minimizing any disruptions to the Customers' businesses.

II. **The Assumption and Assignment of the Customer Contracts to Element Critical Reflects a Sound Exercise of the Debtors' Business Judgment.**

26. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).

27.     The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that 'the question whether a lease should be rejected . . . is one of business judgment.'") (quoting *Grp. of Institutional Inv'rs v. Chicago, M., St. P. & P. R. Co.*, 318 U.S. 523, 550 (1943)); *see also In re Texas Sheet Metals, Inc.*, 90 B.R. 260, 264 (Bankr. S.D. Tex. 1988) ("The traditional business judgment standard governs the rejection of ordinary executory contracts.").

28.     The "business judgment" standard requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) (stating that the business judgment standard only "requires a showing that the proposed course of action will be advantageous to the estate[.]" (citation omitted)). Further, under the business judgment standard, "[a] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'" *In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422 (citing *Wheeling-Pittsburgh Steel Corp. v. Penn Power Co. (In re Wheeling-Pittsburg Steel Corp.)*, 72 B.R. 845, 849-50 (Bankr. W.D. Pa. 1987)).

29.     The Debtors have determined, in their sound business judgment, that the assumption and assignment of the Customer Contracts to Element Critical is in the best interests of the Debtors' estates for the various reasons specified above. Specifically, these transactions, in addition to the rejection of the Master Agreement under the Plan, allow the Debtors to eliminate unnecessary costs and obligations associated with the Master Agreement and Customer Contracts while reducing potential administrative costs. Absent the Stipulation, the Debtors would be forced to pursue a non-consensual rejection of the Master Agreement and Customer Contracts and incur

potential challenges and litigation costs. The Debtors believe that this option represents a less attractive economical and operational solution as compared to the Stipulation and risks significant disruption to the Debtors' business. Accordingly, the Court should approve the Debtors' assumption and assignment of the Customer Contracts to Element Critical.

### Emergency Consideration

30. The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003. The Court has approved the Sale Transactions, which the Debtors are aiming to close as soon as possible and thereby consummate the confirmed Plan. In order to successfully implement the transactions contemplated by this Motion and mitigate any additional administrative expense as a result of continued obligations under the Master Agreement, the Debtors seek relief from the Court on October 31, 2022.

### Reservation of Rights

31. Except as otherwise set forth herein or in the Stipulation, nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors', or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a

concession by the Debtors that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

32. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h), which is necessary to implement the relief requested in this Motion.

### Notice

33. The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) counsel for the Committee; (c) the entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis); (d) counsel for PNC Bank, National Association, as the administrative agent under the Debtors' ABL DIP facility; (e) counsel for Alter Domus Products Corp., as the administrative agent under each of the Debtors' prepetition term loan facilities; (f) counsel for the ad hoc group of term loan lenders and the term loan DIP lenders; (g) counsel for Acquiom Agency Services LLC, as term loan DIP agent under the Debtors' term loan DIP facility; (h) the United States Attorney's Office for the Southern District of Texas; (i) counsel to the Information Officer; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and all similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general in the states where the Debtors conduct their business operations; and (n) any party that

has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no further notice is necessary.

WHEREFORE, the Debtors request entry of an order, substantially in the form of the Order filed with this Motion, granting the relief requested herein and granting such other relief as the Court deems just, proper and equitable.

Dated: October 26, 2022
Houston, Texas

/s/ *Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER LLP** | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | Philip C. Dublin (admitted *pro hac vice*) |
| Jennifer F. Wertz (TX Bar No. 24072822) | Meredith A. Lahaie (admitted *pro hac vice*) |
| Rebecca Blake Chaikin (S.D. Bar No. 3394311) | Matthew D. Friedrick (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | One Bryant Park |
| Houston, Texas 77010 | New York, New York 10036 |
| Telephone: (713) 752-4200 | Telephone: (212) 872-1000 |
| Facsimile: (713) 752-4221 | Facsimile: (212) 872-1002 |
| Email:  mcavenaugh@jw.com | Email:  pdublin@akingump.com |
|           jwertz@jw.com |           mlahaie@akingump.com |
|           rchaikin@jw.com |           mfriedrick@akingump.com |
| | |
| *Co-Counsel to the Debtors and* | -and- |
| *Debtors in Possession* | |
| | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| | Marty L. Brimmage, Jr. (TX Bar No. 00793386) |
| | Lacy M. Lawrence (TX Bar No. 24055913) |
| | Zach D. Lanier (admitted *pro hac vice*) |
| | 2300 N. Field Street, Suite 1800 |
| | Dallas, Texas 75201 |
| | Telephone: (214) 969-2800 |
| | Facsimile: (214) 969-4343 |
| | Email:  mbrimmage@akingump.com |
| |           llawrence@akingump.com |
| |           zlanier@akingump.com |
| | |
| | *Co-Counsel to the Debtors and Debtors in Possession* |

**Certificate of Service**

I certify that on October 26, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/     *Matthew D. Cavenaugh*
Matthew D. Cavenaugh